IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) NO. 1:18-cr-00006-2 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| | ) |
| COURTNEY SNOW DAILY | ) |

## MEMORANDUM OPINION

Pending before the Court is Defendant's Motion for Compassionate Release (Doc. No. 78, "Motion"). Via the Motion, Defendant seeks a reduction of her 120-month sentence and immediate release from the custody of the Bureau of Prisons ("BOP"), pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Like many other federal inmates in this district and around the country, Defendant claims that the ongoing COVID-19 pandemic, as applied to her specific health profile, and her specific family circumstances satisfy the requirement of "extraordinary and compelling reasons" necessary for this Court to grant "compassionate release"[1] under Section 3582(c)(1)(A)(i), and that compassionate release is otherwise appropriate in her case. The Government has filed a response in opposition (Doc. No. 85, "Response"), arguing that Defendant's Motion should be denied because she has not shown extraordinary and compelling reasons, and that other applicable considerations counsel strongly against compassionate release.

---

[1] Such motions are also known as ones for "sentence modification"; thus, the Court refers to both "compassionate release" and "sentence modification" throughout this opinion when referring to Defendant's requested relief. *See United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at n.2 (D. Utah Feb. 18, 2020) ("In this order, the court uses the phrase 'compassionate release' and 'sentence modification' interchangeably, which is consistent with how other courts have used the terms."); *United States v. McDonald*, No. 94-CR-20256-1, 2020 WL 3166741, at *1 (W.D. Tenn. June 8, 2020).

## BACKGROUND

On July 25, 2018, Defendant and her co-Defendant were charged in a 14-count Indictment. Defendant is named in ten of those counts: conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count One); six counts of knowingly and intentionally distribute and possess with intent to distribute 5 grams or more of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Counts Two, Three, Four, Seven, Nine, and Thirteen); and three counts of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A). (Counts Five, Eight, and Fourteen). (Doc. No. 1).

On June 21, 2019, Defendant pled guilty to a lesser-included offense within Count One (namely, conspiracy to distribute and possess with intent to distribute 5 grams or more of methamphetamine) and to Count Five of the Indictment pursuant to a so-called binding plea agreement submitted under Federal Rule of Criminal Procedure 11(c)(1)(C), wherein the United States agreed to dismiss the other counts. (Doc. No. 60). The agreed sentence was for 120 months—60 months on Count One followed by 60 months consecutive on Count Five—in the custody of BOP (the mandatory minimum proscribed by statute for each count). (*Id*.).

On October 25, 2019, the Court accepted the parties' agreed recommended sentence of 120 months and thus sentenced Defendant to serve 120 months of imprisonment, followed by 4 years of supervised release. (Doc. No. 74). Defendant has been serving her sentence at FCI Aliceville (Alabama). According to BOP, Defendant's release date is February 15, 2027. *See Federal Inmate Locator*, Bureau of Prisons, https://www.bop.gov/inmateloc/ (last accessed Dec. 21, 2020).

## LEGAL STANDARDS FOR "COMPASSIONATE RELEASE"

Prior to 2018, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act amended 18 U.S.C. § 3582(c) to allow prisoners to move for compassionate release on their own behalf. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. Now, under 18 U.S.C. § 3582(c)(1)(A), as modified by the Section 603(b)(1) First Step Act,[2] a district court *may* under certain circumstances grant a defendant's motion for compassionate release (hereinafter, "defendant-filed motion"). *See United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020) ("Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory."). In order to grant such a defendant-filed motion, however, a court must find that the so-called "exhaustion requirements" have been satisfied—*i.e.*, "[either] the defendant has fully exhausted all administrative rights to appeal a failure of [BOP] to bring a motion [for compassionate release] on the defendant's behalf or [there has been a] lapse of 30 days since the receipt of such a request [for BOP to file such a motion] by the warden of the defendant's facility, whichever is earlier." *See also United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) (explaining that a district court may not disregard the exhaustion requirements of Section 3582(c)(1)(A)).

Once it properly can act on a defendant-filed motion brought under 18 U.S.C. § 3582(c)(1)(A), the district court next determines whether, in its discretion, to grant compassionate release to a defendant. In its recently issued opinion in *Jones*, the Sixth Circuit discussed the steps

---

[2] That paragraph of Section 603 provides:

 (b) INCREASING THE USE AND TRANSPARENCY OF COMPASSIONATE RELEASE.—Section 3582 of title 18, United States Code, is amended—
    (1) in subsection (c)(1)(A), in the matter preceding clause (i), by inserting after ''Bureau of Prisons,'' the following: ''or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . .''

of the compassionate release analysis:

> The three-step § 3582(c)(1)(A) test is as follows. At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).12 At step two, a court must "find[ ]" whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A) (emphasis added). The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. *See* U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018). Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon* [*v. United States*], 560 U.S. [817,] 827 [(2010)]. At step three, "§ 3582(c)[ (1)(A) ] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

*Jones*, 980 F.3d at 1108. The court then went on to resolve the following question with respect to defendant-filed motions (as opposed to compassionate-release motions filed BOP) in particular: "given the First Step Act's procedural reforms to compassionate release, is § 1B1.13 still an applicable—'that is, "relevant" or "appropriate,"' [*United States v. Ruffin*, 978 F.3d 1000, 1007–08 (6th Cir. 2020)]—policy statement for the purposes of the second § 3582(c)(1)(A) inquiry?" *Id*. The court noted that this is a question that has "sharply divided the courts," *id*. (citation omitted), as many district courts, including this Court, previously considered the Section 1B1.13 policy statements applicable when determining whether compassionate release was warranted. The court then chose a side, holding that "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id*. (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).³ Therefore, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in

---

³ Prior to *Jones*, this Court treated § 1B1.13 as applicable to all motions for compassionate release, whether filed by BOP or by a defendant. The Court does not necessarily perceive that such treatment resulted in a resolution of any defendant-filed motions that was any different than the result the Court would have reached by treating § 1B1.13 as inapplicable to defendant-filed motions. But the Court does note that at least the analytical framework it used prior to *Jones* was different than the analytical framework it will use in the aftermath of *Jones*.

the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

In other words, because § 1B1.13 is inapplicable to defendant-filed motions, a district court adjudicating such a motion is not bound by anything § 1B1.13 has to say about—including any limitations or requirements § 1B1.13 would impose upon—the finding of "extraordinary and compelling reasons." But this rule is not the only consequence of the Sixth Circuit's decision in *Jones*. Another is that the district court, in adjudicating a defendant-filed motion, may disregard the requirement of § 1B1.13(2) that the court find the defendant not pose a danger (to any other person or to the community) in order to grant compassionate release.

If, in adjudicating a defendant-filed motion, a district court determines that extraordinary and compelling reasons for compassionate release exists, the court then determines whether compassionate release is warranted in light of the Section 3553(a) sentencing factors. *See Jones*, 980 F.3d at 1112.[4] The sentencing factors set forth in Section 3553(a) include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—

---

[4] As suggested above, under *Jones*, the analysis of a defendant-filed motion differs from the analysis of a BOP-filed motion in that (among other ways) the latter kind of motion—to which § 1B1.13 remains applicable—requires an intermediate determination of whether the defendant-movant poses a danger to other persons or the community. *See* U.S.S.G. §1B1.13(2).

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the . . .
> > i) [United States Sentencing Guidelines, ("U.S.S.G.")]—
> > ii) [in effect at the time of sentencing]
>
> (5) any pertinent policy statement—
> > A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code; and
> > B) [and in effect at the time of sentencing]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## ANALYSIS

### I. EXTRAORDINARY AND COMPELLING REASONS

In addressing the merits, the Court first must determine whether "extraordinary and compelling reasons" exist for Defendant's compassionate release. Defendant bears the burden to show that extraordinary and compelling reasons exist warranting her release. *United States v. Shabudin*, 445 F. Supp. 3d 212, 214 (N.D. Cal. May 12, 2020); *United States v. Crouch*, No. 5:19-CR-00029-TBR, 2020 WL 1963781, at *3 (W.D. Ky. Apr. 23, 2020) ("[Defendant's] circumstances do not meet the burden of extraordinary and compelling.").

In the Motion, to demonstrate extraordinary and compelling reasons, Defendant relies on the prevailing COVID-19 pandemic and her medical condition (*i.e.*, polycystic ovary syndrome). (Doc. No. 78 at 2,4). Defendant also relies on the fact that her mother, who is the sole caretaker of her three-year-old child, is experiencing serious health problems that, in Defendant's view, could cause serious uncertainty in her child's life.

In Response, the Government argues that "Defendant has not provided any documentation for her asserted medical conditions and therefore cannot meet her burden to establish his

entitlement to a sentence reduction on that ground alone." (Doc. No. 85 at 9 (citing *United States v. Lotts*, No. CR 08-1631 JAP, 2020 WL 835298, at *4 (D.N.M. Feb. 20, 2020))). The Government also argues that even if Defendant provided documentation, polycystic ovary syndrome is not an extraordinary and compelling reason for a sentence reduction because "the guidance provided by the CDC [Centers for Disease Control and Prevention] does not indicate that females with polycystic ovary syndrome are or may be at increased risk of severe illness from COVID-19." (*Id.* at 10).

Additionally, the Government argues that Defendant has not demonstrated that her mother is incapacitated; therefore, she has not demonstrated that her mother's health condition qualifies as an extraordinary and compelling reason for compassionate release. (*Id.* at 12). The Government asserts that an adverse health condition of a child's caregiver does not rise to the level of an extraordinary and compelling reason absent a showing of incapacitation or death of the caregiver. (*Id.* (citing *United States v. Cruz-Rivera*, No. 11-43, 2020 WL 5993352, at *7 (E.D. Pa. Oct. 9, 2020))).

The Court need not decide whether Defendant has met her burden to demonstrate that extraordinary and compelling reasons exists, because the Court below decides that compassionate release is not available to Defendant even if she were able to demonstrate extraordinary and compelling reasons.

II.    SECTION 3553(a) FACTORS

Even assuming that Defendant is able to demonstrate that extraordinary and compelling reasons exist for compassionate release, the Court would still deny the Motion upon consideration

of the Section 3553(a) factors, which collectively cut against granting compassionate release for Defendant.[5]

*The nature and circumstances of the offense* cut against compassionate release. In connection with the instant offenses of conviction, Defendant sold methamphetamine to a confidential informant on multiple occasions and sold a firearm to the confidential informant. (PSR at ¶ 22). Additionally, when a federal search warrant was executed at the residence where Defendant resided, nine loaded firearms, 755 rounds of ammunition, 12 suspected illegal explosives, and 4 exploding targets were located at the residence in addition to methamphetamine, pills, and cash. (*Id*. at ¶ 26). As this Court has noted before, the mix of firearms and narcotics is a particularly dangerous combination. *See United States v. Sanders*, No. 3:12-CR-00183, 2020 WL 6460224, at *7 (M.D. Tenn. Nov. 3, 2020) ("Defendant's underlying offense—possession of a firearm during a drug trafficking crime—involves the very dangerous mix of drugs and firearms."). Such a dangerous combination, in the Court's view, does not support a shortened sentence.

*The history and characteristics of Defendant and the need to protect the public from further crimes of Defendant* cut against compassionate release. The Court considers these two factors together because they are interrelated as they relate to defendant's history of misconduct. Defendant did not have any criminal convictions prior to the instant offense conduct, (PSR at ¶ 49), which certainly cuts in her favor. However, she did have two prior arrests, and yet these (surely quite negative) encounters with the criminal justice system unfortunately did not dissuade her from the instant offenses. Moreover, she did have a serious violation of her conditions of pretrial release while awaiting sentencing on the instant charges. Specifically, after her arrest and pretrial release

---

[5] *Jones* suggests that a district court has the discretion to assume *arguendo* that extraordinary and compelling reasons exist and then turn to the Section 3553(a) factors, inasmuch as *Jones* affirmed a district court that did exactly that. *See Jones*, 980 F.3d at 1108 ("Thus, the district judge in Jones's case permissibly assumed for the sake of argument that extraordinary and compelling circumstances existed[.]").

in this case, Defendant resumed selling methamphetamine—a confidential informant purchased 2.8 grams of methamphetamine for $100 from Defendant—*a mere eleven days* after the Defendant was released on pretrial release. (PSR at ¶ 30; *id.* at p. 2). Thereafter, because of this conduct combined with Defendant's failure to report to her pretrial services officer and an arrest in state court for failure to appear, the Court revoked Defendant's supervised release. (Doc. No. 35).

The Court agrees with the Government that "[i]f Defendant was brazen enough to continue selling methamphetamine while on pretrial release and after entering guilty pleas, there is nothing to suggest that she would be deterred from continuing such conduct if released after serving a little over two years in custody." (Doc. No. 85 at 17). Defendant's inability to correct her criminal behavior demonstrate her repeated disrespect for the law and a substantial possibility (though admittedly, and fortunately, not a certainty) of recidivism.

Accordingly, the Court concludes that these factors (Defendant's history and the need to protect the public) weigh against granting compassionate release insofar as Defendant's history with the criminal justice system is concerned.

The Court next considers Defendant's history with respect to the two grounds asserted as extraordinary and compelling reasons for her release. As noted, the Court is assuming *arguendo* that one or both of them does constitute extraordinary and compelling reasons, but (in what may be an unintended signal that the Court well might not actually have found either of them to be extraordinary and compelling reasons), the Court finds that neither moves the needle appreciably on the Section 3553(a) factors.

Regarding one of the reasons, the medical condition of her mother (who has been caring for Defendant's child while Defendant is incarcerated), the Government aptly notes, "It's important to note that the documentation provided by the Defendant regarding her mother's

medical condition predates her conviction in this case. There is nothing to suggest that the health conditions of Defendant's mother have changed or worsened since the Defendant's sentencing or the pandemic." (Doc. No. 85 at 12). The Government goes on to use this observation to argue that Defendant's mother's health was not an extraordinary and compelling reason, but the Court now takes this in a different direction: if Defendant's mother's medical condition prior to sentencing (which, as far as the Court has been shown, has not materially changed) truly was reason for a sentence below 120 months, this should have been taken into account before sentencing and Defendant should not have recommended (jointly with the Government) a sentence of 120 months based on the circumstances at that time. Moreover, although the Court recognizes its discretion to take into account the needs of a defendant's dependents, with whom the Court sympathizes, the Court is loath to place much weight at all on such needs. The reason is twofold: (1) a person *with a dependent* who subjects himself or herself to a lengthy prison sentence via criminal conduct is actually more culpable, all other things being equal, than a person with *no dependents* and thus does not gravely let down someone depending on him or her not to be incarcerated; and (2) by placing much weight on this factor, the Court believes it runs the risk of providing disparate sentencing treatment based on familial status, a risk the Court cannot easily countenance.

As for the second reason, polycystic ovary syndrome, the Court has a couple of observations that cut against Defendant on this sentencing factor (and presumably also the next factor below). First, as the Government notes, Defendant's medical condition has been managed while in prison and BOP has been taking efforts (imperfect though they may be) to control the spread of COVID-19. *See Ruffin*, 978 F.3d at 1009 (affirming district court's denial of motion for compassionate release for an inmate-defendant with serious medical conditions, in part because he "was receiving regular medical treatment to manage those conditions" and "the prison had adopted

sufficient preventive measures to slow the spread" of COVID-19"). Second, Defendant cites an article that she contends is "emerging research" which shows that "individuals with PCOS may be at an increased risk for severe complications should they contract COVID-10 [sic]." (Doc. No. 78 at 3 (citing Kyrou, I., *Polycystic ovary syndrome (PCOS) and COVID-19: an overlooked female patient population at potentially higher risk during the COVID-19 pandemic*, 18 BMC Medicine 220 (2020), https://doi.org/10.1186/s12916-020-01697-5)). However, the Court finds that Defendant's citation to a report concluding that PCOS "may" raise an individual's risk of serious illness from COVID-19 is insufficient to establish that Defendant's risk from COVID-19 *is* elevated by PCOS, and thus is not materially probative on the instant factor.

*The need to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner* likewise does not cut in favor of compassionate release for Defendant. The Court has already addressed this factor above in connection with Defendant's polycystic ovary syndrome. The Court here will focus on Defendant's other relevant medical need, *i.e.*, the prevailing need for Defendants (as with Americans generally) to avoid a COVID-19 infection and a bad outcome from any infection that might occur.

The Court will not act like it knows the extent to which Defendant's chances of COVID-19 infection would be lower if she is released than if she stays in BOP custody, or how much more likely a bad outcome upon infection would be for her as opposed to someone with a more typical medical profile. As matter of sheer epistemology, the undersigned cannot and does not know such things; this is true despite publicly available information from medical experts and public health officials, inasmuch as they do not always agree with one another on issues related to COVID-19

and inasmuch as some seem to have reversed themselves on various issues over time.[6] In short, information and opinions regarding the prevalence of, effect of, and optimal countermeasures to COVID-19 have been in constant flux, and it would be folly for the Court to rely blindly on any particular opinion or factual assertion merely because it comes from a purportedly knowledgeable or reputable source.

Having said that, the Court is willing to accept that Defendant is at risk of COVID-19 infection at FCI Aliceville, as there are currently 17 active COVID-19 cases in the facility. *See COVID-19*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed Dec. 22, 2020). The Court is also willing to assume (for purposes of argument) that Defendant's medical condition makes her prone to relatively bad outcomes in case of infection.

But that does not mean that these circumstances ultimately support compassionate release. The Court would merely be speculating as to the true extent of the risk of infection, or likelihood of a bad outcome upon infection, during continued incarceration at FCI Aliceville. And to say the least, it is not like there in no substantial risk of infection outside of BOP custody—COVID-19 cases continue to rise across the United States, including Tennessee (where Defendant proposes to reside) which is considered one of the hardest hit regions of the United States and is ranked No. 2 nationally for daily cases per 100,000 people. *See* Wegner, Rachel, *Tennessee's COVID-19 outbreak is now among the worst in the nation as vaccine rollout nears,* The Tennessean, (Dec. 16, 2020 1:28 P.M.), https://www.tennessean.com/story/news/health/2020/12/16/tennessee-covid-19-outbreak-among-top-country-vaccine-nears-rollout/3921120001/ (last accessed Dec. 22,

---

[6] It seems clear to the undersigned that certain public health authorities, public health officials, and other public officials over time (or at one or more particular times) have equivocated regarding, or even starkly changed, their views concerning one or more of numerous issues, including but not limited to: whether COVID-19 can be transmitted person to person; whether persons should avoid crowds and/or otherwise alter their daily regimen due to the presence of COVID-19 in the United States; the likely death toll and mortality rate from COVID-19; whether masks/face coverings should be worn; the extent to which COVID-19 may be transmitted via contact with inanimate surfaces; and whether an effective vaccine feasibly could be rolled out by the end of calendar years 2020.

2020). And as is also a matter of public record (and undeniable truth in the undersigned's personal experience), these cases have accrued despite substantial steps by both individuals and government authorities to keep the infection rate down. Moreover, the Court cannot say that the outcome of any infection for Defendant would be worse in BOP custody, with BOP medical care, than it would be if Defendant fends for herself in terms of COVID-related medical care out in the community.

Additionally, given Defendant's history of pretrial release violations, Defendant has demonstrated an unwillingness and/or inability to comply with rules and societal norms in at least some important respects. This is vital because decreasing her risk of infection upon release from BOP custody would require her to observe public/health and societal norms related to COVID-19, such as handwashing, face-covering and social distancing. For all of these reasons, there is no good basis to believe that Defendant's release is likely *in actuality*—not just theory—to substantially reduce her risk from COVID-19.

*The sentencing guidelines* do not support compassionate release. Defendant's guideline range was 108 to 135 months on Count One, and five years to run consecutive to all other counts on Count Five. (PSR at 22). Defendant was sentenced to a sentence of 120 months (the mandatory minimum), an already substantial downward variance from the guideline range. The revised sentence requested by Defendant (of roughly two years) would amount to a dramatic downward variance from her guideline range.

*The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct* also cuts against Defendant. The sentence Defendant now seeks would result in a disparately low sentence compared to defendants convicted of similar conduct with similar criminal history. As noted above, Defendant's mandatory minimum sentence was 120 months. (PSR at 34). The Court accepted the binding plea agreement; and the

Court sentenced Defendant to serve 120 months of imprisonment, a (well) below guidelines range sentence, as noted above. Notably, having herself agreed that 120 months was the appropriate sentence in her case, Defendant can hardly deny that a sentence substantially under 120 months generally would be inappropriately low in her case—which suggests that her requested reduced sentence also poses a risk of an unwarranted sentencing disparity.

A sentence reduction to roughly two years would represent an especially large variance from Defendant's mandatory minimum sentence, and this fact may weigh against her release. *See United States v. Kincaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020) (holding that it is appropriate for district courts to consider the percentage of the overall sentence left to be served when addressing compassionate release motions); *Ruffin*, 978 F.3d at 1008 (affirming district court's denial of motion for compassionate release, in part because the defendant-inmate "has yet to serve even half of his 25-year sentence" and because "the court had already varied downward" by one-sixth the bottom of the guideline range).

The Court finds that such a large requested variance as tending to frustrate the objective of avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. The Court also notes that the fact that Defendant has served nowhere near all of her (below-guideline) sentence can weigh against Defendant not only on this factor, but also on other factors. *Ruffin*, 978 F.3d at 1008 ("We have recognized that some of the § 3553(a) factors, including the 'need to provide just punishment' and 'to reflect the seriousness of the offense,' allow courts to consider the 'amount of time' that a defendant has served on a sentence when deciding whether to grant a sentence reduction."); *see also Jones*, 980 F.3d at 1112-13 (affirming the district court's denial of the defendant's compassionate release motion where the district court examined the Section 3553(a) factors and reasoned that the factors weighed against

granting the motion because, among other things, the defendant "had served only two years of his decade-long sentence [for non-violent drug offenses] and that [the defendant] was a repeat offender").

Accordingly, the Court finds that to grant Defendant compassionate release would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. Additionally, a reduction of the Court's original sentence would also fail to reflect the seriousness of the offense Defendant committed and would not provide a just punishment for his conduct. It would also undermine the Court's attempt to use the sentence to promote respect for the law and serve as a deterrent for criminal conduct.

For those reasons, the Court finds that the Section 3553(a) factors weigh in favor of denying Defendant's Motion.

## CONCLUSION

Compassionate release is an extraordinary remedy. *See*, *e.g.*, *United States v. Rizzo*, No. CR 16-20732, 2020 WL 2092648, at *3 (E.D. Mich. May 1, 2020). Such remedy is unavailable here, given that it would be inappropriate, considering the Section 3553(a) factors.

For these reasons, the Motion (Doc. No. 78) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE